---

Nathan Baker, Hoboken, N. J., proctor for libellant-appellant; Nathan Baker, Hoboken, N. J., and Anthony J. Randolph, New York City, advocates.

Irving H. Saypol, U. S. Atty., New York City, for respondent-appellee; Horace M. Gray and Edward R. Phillips, New York City, advocates.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

### GREER v. UNITED STATES.
### No. 124, Docket 21844.

United States Court of Appeals
Second Circuit.

Argued Dec. 13, 1950.

Decided Feb. 7, 1951.

PER CURIAM.

The libellant, a longshoreman, was employed by the James Healing Company, a stevedoring contractor, to discharge a cargo of ammunition from the S. S. John W. Powell, a vessel owned and operated by the United States. He filed a libel against the United States containing two counts: (1) to recover for personal injuries sustained by falling into the hold and claimed to be due to the unseaworthiness of the vessel; (2) to recover for personal injuries claimed to be due to negligence in failing to furnish the libellant with a safe place to work. The alleged negligence consisted, *inter alia,* in neglecting to remove dunnage from the 'tween deck of the No. 3 hold near the coaming, and in removing a cluster light which had been provided for the safety of libellant, thereby leaving him in darkness.

 As for the claim that pieces of dunnage were so near the coaming of No. 3 'tween deck that libellant stumbled over it and fell into the hold, the trial court found that the vessel was at all times seaworthy, and that the part of the 'tween deck where his injuries occurred was clear of any dun-

nage except for safety flooring. The trial court reached the conclusion that his accident was due to his falling from a ladder, which he had started to ascend, and which was placed on the floor of the 'tween decks and ran up to the main deck. There was evidence to support this conclusion, and, if it was correct, the dunnage could have had nothing to do with the accident. It is, therefore, entirely unnecessary to consider any further aspects of the claim based on stowage of dunnage.

■ The court also found that the 'tween deck was adequately lighted by floodlights upon the mainmast of the vessel, and that the removing of the cluster lights used to illuminate the hold and the 'tween deck was under the exclusive control and direction of the stevedoring company. While there was a conflict in the evidence as to whether the removal of the cluster lights was under the exclusive control of the stevedoring company, as to whether a stevedore employee or a member of the crew removed the last cluster light, and as to whether, after its removal, there was sufficient illumination from the floodlights shining down from the mast to enable the libellant to work in safety, we hold that the findings of the trial court cannot be regarded as clearly erroneous. There was testimony supporting the respondent's contention that there was light enough for libellant's safety. Swan, the acting master of the vessel, deposed that the floodlights on the mast sufficiently illuminated the ladder from which libellant fell. Wilson, the night engineer, testified that the floodlights illuminated the inside of the hatch. Even if the sudden removal of the cluster light threw the ladder into some momentary obscurity, there is no reason for us to reject the finding of the trial judge that the operation of closing the hatches and removing the lights was in the control of the stevedoring company, rather than the United States as owner and operator of the vessel. O'Connell, the hatch boss of the stevedoring gang, as well as Miale, a stevedore, testified that a person wearing the dress of a seaman pulled out the last cluster light, but Swan, the acting master, asserted in his deposition that this

was done by a stevedore and that the crew's security watch was down below in the messroom, where it was warm.

For the foregoing reasons, the decree is affirmed but without costs.